NORTHVILLE COACH LINES, INC., *v.* CITY OF DETROIT.

DECISION OF THE COURT.

1. MUNICIPAL CORPORATIONS—TRANSPORTATION SYSTEM—OPERATION OUTSIDE CORPORATE LIMITS.

   Operation of municipally-owned transportation system outside the corporate limits is not exempted by the Constitution from the provisions of statutory law (Const 1963, art 7, § 24; CLS 1961, § 117.4f).

2. SAME—TRANSPORTATION SYSTEM—CONSTRUCTION OF STATUTES— ADJACENT—ADJOINING.

   *Adjacent* and *adjoining,* as terms are used in provision of home-rule act authorizing a city to operate a transportation facility "within its limits, and its adjacent and adjoining suburbs within a distance of 10 miles from any portion of its city

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 7, 11]  38 Am Jur, Municipal Corporations § 570.
   Power of municipal corporation to extend its service beyond corporate limits.  49 ALR 1239, 98 ALR 1001.
[4]  50 Am Jur, Statutes §§ 303–308.
[6]  43 Am Jur, Public Utilities and Services § 195.
[8]  38 Am Jur, Municipal Corporations § 567.
[9]  5 Am Jur 2d, Appeal and Error § 1009.
[10]  50 Am Jur, Statutes § 358.
[12]  50 Am Jur, Statutes §§ 156–158.

limits" are construed to mean having a common boundary (CLS 1961, § 117.4f).

3. SAME—CONSTRUCTION OF STATUTE—TRANSPORTATION SYSTEM.

Legislative intent relative to whether or not a municipal transportation system can extend itself into noncontiguous suburbs within a 10-mile limit should be discerned from that portion of pertinent statute dealing most specifically with the situation rather than a seemingly inconsistent provision where a phrase dealing with transportation systems was included with other matters (CLS 1961, § 117.4f).

4. STATUTES—CONSTRUCTION—PURPOSE.

It is not to be supposed that any section of a statute was inserted with no intelligible purpose.

5. MUNICIPAL CORPORATIONS—TRANSPORTATION SYSTEM—NONCONTIGUOUS SUBURB.

Requirement of home-rule act that suburb to which city-owned transportation facility could be extended be *adjacent and adjoining* was not satisfied, where the suburb was within 10 miles of city limits, but not contiguous thereto at any point or line (CLS 1961, § 117.4f).

6. SAME—TRANSPORTATION SYSTEM—PUBLIC SERVICE COMMISSION.

A municipally-owned transportation system is not subject to the jurisdiction of the public service commission and city need not seek commission approval for any action it may lawfully undertake (CLS 1961, § 117.4f).

7. SAME—TRANSPORTATION SYSTEM—EXTENSIONS TO SUBURBS.

A municipally-owned transportation system may only do that which the home-rule act permits, and operate extensions of the system in suburbs that touch upon the city, not in suburbs not adjacent and adjoining (CLS 1961, § 117.4f).

8. SAME—TRANSPORTATION SYSTEM—CONSTITUTIONAL LAW—STATUTES.

The authority of a city to operate a transportation facility is governed by the Constitution as limited by the home-rule act (Const 1963, art 7, § 24; CLS 1961, § 117.4f).

9. COSTS—PUBLIC QUESTION—MUNICIPAL TRANSPORTATION SYSTEM—SUBURBS.

No costs are allowed on appeal in suit involving extension of operation of municipally-owned transportation system into noncontiguous suburbs, a public question being involved (Const 1963, art 7, § 24; CLS 1961, § 117.4f).

DISSENTING OPINION.

FITZGERALD, J.

10. STATUTES—CONSTRUCTION.

*A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative and superfluous, void, or insignificant.*

11. MUNICIPAL CORPORATIONS—CONSTRUCTION OF HOME-RULE ACT.

Adjacent and adjoining suburbs, *as used in provision of the home-rule act relative to operation of municipally-owned transportation system, is construed to mean two different kinds of suburbs, (1)* those nearby but not touching the city *and (2)* those touching or bounding at some point or on some line *(CLS 1961, § 117.4f).*

12. STATUTES—CONSTRUCTION—NONREPEATED WORDS.

*Words enacted in one section of a statute do not become inoperative merely by the fact of their nonrepetition in a later subparagraph of the same section.*

Appeal from Wayne; Fitzgerald (Neal), J. Submitted Division 1 October 7, 1965, at Detroit. (Docket No. 365.) Decided April 12, 1966. Leave to appeal granted by Supreme Court June 1 and June 20, 1966. See 377 Mich 712, 378 Mich 720, 379 Mich 317.

Complaint by Northville Coach Line, Inc., against the Detroit Street Railway of the city of Detroit seeking to enjoin defendant from extending bus service into Livonia on Seven Mile road. Michigan Motor Bus Association, a Michigan corporation, intervened as plaintiff. Judgment for defendant. Plaintiff and intervenor appeal. Reversed and remanded.

*Leib & Leib (Samuel W. Leib,* of counsel) for plaintiff.

*Edmund M. Brady* and *John M. Veale,* for intervenor.

*Manuel Zechman,* for defendant.

J. H. Gillis, J.  Plaintiff Northville Coach Lines, Inc., and its predecessor have conducted bus service from Northville, via Livonia, to Detroit and return, since 1932. This service has been operated under the appropriate orders and certification of the Michigan public service commission under the provisions of the Michigan motor carrier act, CL 1948 and CLS 1961, § 475.1 *et seq.*, as amended, (Stat Ann and Stat Ann 1963 Cum Supp § 22.531 *et seq.*).

The defendant city of Detroit acquired a system of transportation lines in 1922 and since then has operated bus lines both within and outside its corporate limits through a municipally owned public utility now called the department of street railways (DSR).

On August 10, 1964, defendant extended its route to include a newly constructed shopping center near the northwesterly corner of Seven Mile and Middlebelt roads in Livonia. This route extended via the city of Dearborn, city of Dearborn Heights, and city of Garden City into a part of Livonia which it had not serviced previously.

Both the Northville Coach Lines service and the DSR service extended along Seven Mile road.

Concurrent with the extension of service by the DSR, Northville instituted this cause in the Wayne county circuit court, asking a determination that Detroit was not authorized to undertake the expansion of service without application to and receipt of authority from the Michigan public service commission, and an injunction.

Plaintiff intervenor, Michigan Motor Bus Association, a group of privately owned and operated motor carriers, operating in various localities of the State, appeared as *amicus curiae*.

Following hearings, the court held that the DSR's operations as a motor carrier in the area involved

outside its corporate boundaries were authorized by
the home-rule act (PA 1909, No 279, as amended
[CL 1948 and CLS 1961, § 117.1 *et seq.*, as amended,
(Stat Ann 1949 Rev and Stat Ann 1963 Cum Supp
§ 5.2071 *et seq.*)]), and that such operations were
exempt from the provisions of the Michigan motor
carrier act.  Judgment was entered December 21,
1964, dismissing the complaint.  A claim of appeal
was filed with the Supreme Court and subsequently
transferred to this Court by order dated January
4, 1965.

Plaintiffs, at the outset of their argument, point
out that they do not seek to prohibit absolutely the
defendant's motor carrier operations outside its
boundaries, but only to subject them to the same
provisions of the motor carrier act as apply to plain-
tiffs.  That act authorizes the Michigan public serv-
ice commission to grant the requisite operating
authority whenever required by "public convenience
and necessity."  Thus, they conclude, if, as defend-
ant claims, there were a public need for additional
transportation service in Livonia, defendant would
have the same opportunity to meet such need as
plaintiff.

In essence, Northville challenges the right of the
DSR to operate *outside* the city of Detroit into
Livonia, serving the same areas it serves without
coming within the purview of the rules that apply
to it.

No case is cited by either side which would be
decisive in the matter.  The entire outcome of the
cause rises or falls upon the interpretation of the
Constitution and statutes which govern.  Our Con-
stitution does not exempt an operation such as that
of the DSR from the provisions of statutory law.
In Const 1963, art 7, § 24, it is provided that trans-
portation may be provided to the municipality and

the inhabitants thereof, but more in point, further goes on to say:

"Services outside corporate limits. Any city or village * * * may operate transportation lines *outside the municipality within such limits as may be prescribed by law.*" (Emphasis supplied.)

What, then, has been "prescribed by law?" The home-rule act, *supra,* section 4f, provides:

"Each city may in its charter provide: * * * (2) For owning, constructing and operating transportation facilities within its limits, and its *adjacent* and *adjoining* suburbs within a distance of 10 miles from any portion of its city limits." (Emphasis supplied.)

There is no dispute but that the service under consideration falls within the 10-mile limitation. The issue here is whether or not the DSR is authorized under the home-rule act, *supra,* and under the provisions of the charter of the city of Detroit to operate a bus line in a municipality which is not contiguous to its corporate limits. This Court's decision must turn on the construction of the term "adjacent and adjoining" as found in section 4f(2) of the home-rule act, *supra.*

Plaintiffs supply dictionary definitions of adjacent, of adjoining, and of words synonymous with these two terms. Case law, too, is furnished by plaintiffs to support their contention that "adjacent and adjoining" mean suburbs joined to Detroit physically, an interpretation which would automatically rule out Livonia. The trial court departed from plaintiff's interpretation and held that the home-rule act did not limit operation of transportation facilities by a municipality in any respect other than to restrict such operations to a distance of 10

miles from the city limits. The trial court based its opinion on section 4f(3) of the home-rule act which provides:

"Each city may in its charter provide: * * * (3) * * * and for the operation of transportation lines without the municipality and within 10 miles from its corporate limits."

Most significantly, the adjectives "adjacent and adjoining" do not appear in subparagraph (3). The trial judge, in his opinion, states:

"Had the legislature desired to limit such operations to the adjacent and adjoining suburbs only, it would have specifically applied that limitation. to permissible charter provisions in paragraph 3 as well as in paragraph 2."

With this conclusion we do not agree. If the legislature intended to permit a municipally owned transportation system to operate anywhere within a 10-mile radius of its city limits, there was no need to include the adjectives "adjacent and adjoining" in the language of subparagraph (2). Without these adjectives, this present extension of service by the DSR would clearly be authorized. It is not a question of why didn't the legislature include the adjectives in subparagraph (3) but why did they use them in subparagraph (2). The terms adjacent and adjoining as used in this act are construed to mean having a common boundary.

Subparagraph (2) deals solely with permissible charter provisions concerning transportation facilities, whereas subparagraph (3) deals with a multitude of subjects including the purchase and condemnation of private property for public use.

The legislative intent relative to whether or not a municipal transportation system can extend itself into noncontiguous suburbs within a 10-mile limit

should be discerned from that portion of the act which deals most specifically with the situation.

Thus, this Court is compelled to resolve the issue by reference to subparagraph (2), not unmindful of its seeming inconsistency with subparagraph (3). It is not to be supposed that any section of a statute was inserted with no intelligible purpose. See *People, ex rel. Bristol,* v. *Board of Supervisors of Ingham County* (1870), 20 Mich 95.

Since there is intervening noncontiguous space between Detroit and Livonia, the requirement of the home-rule act, *supra,* has not been satisfied.

Defendant contends that it is exempt from the provisions of the Michigan public service commission act, CLS 1961, § 460.1 *et seq.* (Stat Ann 1963 Cum Supp § 22.13[1] *et seq.*) and the Michigan motor carrier act, *supra,* and therefore its extension of DSR service into Livonia is not and cannot be subject to regulation by the public service commission.

With this contention we agree. The DSR is not subject to the jurisdiction of the public service commission. It need not seek the approval of the commission for any action it might lawfully undertake. The point remains that the DSR, as a municipally owned transportation system, may only do that which the home-rule act permits. Its authority to do or not to do any particular act is governed by our Constitution as limited by the provisions of the home-rule act. This act only permits the Detroit department of street railways to operate in suburbs that touch upon the city limits of Detroit.

It may well be that modern day urban needs cannot adequately be met in these circumstances, but this problem is one of legislative concern and cannot be considered a relevant issue in this Court.

Judgment reversed and the case remanded to the circuit court for entry of an order enjoining the DSR from extending its operation into the city of Livonia and such further relief as the circuit court deems appropriate in accordance with this opinion. No costs, a public question being involved.

LESINSKI, C. J., concurred with J. H. GILLIS, J.

FITZGERALD, J. (*dissenting*).   We venture an answer to the question posed in the majority opinion which was phrased thus: It is not a question of why didn't the legislature include the adjectives (adjacent and adjoining) in subparagraph (3) but why did they use them in subparagraph (2)?

Our answer is this: because they intended that the words in (2) be given an effect and intended certain clear definitions by their inclusion.

The majority, without elaboration, makes the statement that, "The terms adjacent and adjoining as used in this act are construed to mean having a common boundary."

This writer believes that the proper construction of the term "adjacent and adjoining suburbs" is that the legislature had reference to two different kinds of suburbs: "adjacent suburbs" and "adjoining suburbs", either being sanctioned, so long as the 10-mile limitation is adhered to.

In the "common boundary" construction placed on the words by the majority, the term "adjacent and adjoining" is defined to mean "adjoining and adjoining".

It is difficult to believe that the legislature joined conjunctively two terms meaning the identical thing with the word *and,* as the majority would have the reader believe.

Sutherland's Statutory Construction, § 4705, states, "A statute should be construed so that effect

is given to all its provisions, so that no part will be inoperative and superfluous, void or insignificant." Clearly, a construction which holds that "adjacent and adjoining" means "adjoining and adjoining" is a judicial determination that the word adjacent is superfluous.

In *Stadle* v. *Township of Battle Creek* (1956), 346 Mich 64, we find the statement, "In construing the statute, words and phrases are accepted in their ordinary sense."

In a matter of first impression involving definition, we turn to Webster, New International Dictionary (3d ed), which furnishes as the first definition of "adjacent", "1 a: not distant or far off: nearby but not touching", presumptively stating these as the common usages of the word.

On the other hand, the same volume defines "adjoining" as: "touching or bounding at some point or on some line: near in space."

Can it then be said that "adjacent and adjoining" mean "having a common boundary?" To say so is to repudiate clear dictionary definition and say that two similar words are better than one and that legislative intent is best effectuated by redundancy.

To the contrary, it is the writer's opinion that "adjacent and adjoining suburbs" means *two* different kinds of Detroit suburbs: (1) *those nearby but not touching;* (2) *those touching or bounding at some point or on some line.*

The majority suggests a "seeming inconsistency" between subparagraphs 4f(2) and 4f(3) because the terms "adjacent and adjoining" are not reiterated in 4f(3). This objection vanishes, however, when it is remembered that words enacted in one section do not become inoperative merely by the fact of their nonrepetition in a later subparagraph of the same section.

Authority for a 10-mile operation of the DSR is found in both 4f(2) and 4f(3). It is in 4f(2) that we are told that this 10 miles encompasses both adjacent suburbs and adjoining suburbs and that no artificial restriction of contiguity or actual physical touching is to be imposed as is imposed by the majority opinion.

On the total record before us, no ground is presented which would have warranted granting the injunction prayed for and the judgment should be affirmed.